(77 South. 40)

## SMITH v. SHARP REAL ESTATE CO.

### (8 Div. 985.)

(Supreme Court of Alabama.　Nov. 15, 1917.)

1. BROKERS ☞94—CONTRACT OF AGENCY TO SELL LAND—DUTY TO DISCLOSE BUYER.

When an agent is employed to find a purchaser for land, it is his duty to disclose the name of the purchaser to his principal, but where an agent is commissioned to sell on stated terms, and makes a written agreement of sale which is binding on the purchaser, the duty to disclose and the duty to execute a deed are concurrent.

2. BROKERS ☞49(1) — SALES OF LAND — COMMISSIONS—WHEN DUE.

Under an agreement to sell land, where commission is to be paid "when the deal is closed," the commission is not due until the sale is consummated according to its terms, or upon substituted terms, unless the seller wrongfully refuses or fails to execute the sale.

3. BROKERS ☞94 — SALES OF LAND — CONTRACT TO SELL—DUTIES OF PURCHASER AND SELLER.

An agency agreement by owner to deliver a deed to a purchaser "now secured" is an acceptance of the purchaser although his identity is not disclosed, but the initiative is on such buyer to tender a required payment and security before the seller can be required to execute a deed.

4. BROKERS ☞94 — CONTRACT TO DELIVER DEED—DUTY TO DISCLOSE BUYER.

Under an agency agreement, whereby a seller of land agrees to deliver a deed "to the purchaser," it is necessary that the name of the buyer be disclosed within the time in which the deed is to be made, as a deed cannot be effectively executed without the name of the grantee.

5. BROKERS ☞88(1)—ACTION FOR COMMISSION —QUESTIONS FOR JURY.

In an action by an agent for furnishing a buyer for land, evidence held to take to the jury the question whether the plaintiff's principal, by his acts in refusing to make a deed, waived offer of performance by the alleged buyer.

6. BROKERS ☞32 — SALE OF LAND — ACTING FOR BOTH PARTIES.

One contracting to sell land for another may act for the purchaser in any way not inconsistent with his duty to his principal.

7. BROKERS ☞54 — PERFORMANCE OF CONTRACT—ABILITY OF PURCHASER TO EXECUTE.

An agent does not have to produce a purchaser "known" to the seller to be able, ready, and willing to execute the contract.

8. BROKERS ☞85(3)—ACTION FOR COMMISSION —EVIDENCE.

In an action for having furnished a buyer for land it was proper for the agent to show that they had informed the seller that the purchaser was able, ready, and willing to make the, required cash payment, it being in fact their duty to so inform the seller.

9. BROKERS ☞8(2)—RELATION—EVIDENCE.

A written contract of purchase by a seller with another was relevant evidence that plaintiffs were agents of the seller, although there was a written contract of agency.

10. TRIAL ☞83(2)—OBJECTIONS TO EVIDENCE —GROUNDS OF OBJECTION.

If a written contract of purchase of land was objectionable to show agency of plaintiffs as not being the best evidence, an objection thereto must so specify.

11. TRIAL ☞260(1) — INSTRUCTIONS — REQUESTED CHARGES COVERED BY OTHER CHARGES.

Refusal of requested charges covered by the charges as given is not prejudicial.

Appeal from Circuit Court, Lauderdale County; Charles P. Almon, Judge.

Assumpsit by the Sharp Real Estate Company against C. L. Smith for commissions on real estate sales. Judgment for plaintiff and defendant appeals. Affirmed.

The facts sufficiently appear. The following charges were refused to defendant:

(1) I charge you that if you believe from the evidence that the Sharp Real Estate Company failed and refused to disclose the name of the purchaser, and for that reason defendant was unable to make a deed and furnish an abstract, . then your verdict must be for defendant.

(2) Before plaintiffs can recover, they must reasonably satisfy your minds that they brought to defendant a purchaser who was able, ready, and willing to buy defendant's land in the terms set out in the contract between plaintiffs and defendant, and if you believe from the evidence that plaintiff did not produce such a purchaser, then you must find for defendant. The fact that the Sharp Real Estate Company, if it be a fact, failed and refused to disclose the name of the purchaser to Smith when requested so to do, and by so refusing Smith did not have sufficient information to enable him to make a deed and produce the abstract, it would be your duty to find for defendant.

(5) I charge you that if you believe from the evidence that the Sharp Real Estate Company in any way represented both Smith and the prospective purchaser in this transaction, then defendant would not be obligated to pay plaintiff any commission.

(6) The defendant is not required to take plaintiff's word as to whether the purchaser was able, ready, and willing to carry out the terms of the contract, and if you believe from the evidence that plaintiff's failure to produce a purchaser known to defendant to be ready, able, and willing to carry out the contract, then it would be your duty to find for defendant.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

William & Roberts, of Florence, for appellant. Mitchell & Hughtson, of Florence, for appellee.

SOMERVILLE, J. [1] When an agent is employed to find a purchaser for land for his principal, it is unquestionably the agent's duty to disclose to his principal the name of any purchaser alleged to have been procured. If he refuses to do so, the principal may decline to proceed, so far as such unknown purchaser is concerned. But when the agent is commissioned to sell on stated terms, and makes a written agreement of sale which is binding upon the purchaser, there is no occasion for his disclosing the name of the purchaser to his principal until the latter is ready to execute a deed concurrently with the purchaser's performance of the obligations resting upon him. Unless otherwise stipulated, the obligations of seller and purchaser are concurrent, and neither can complain of a default by the other, unless he has himself first tendered performance in accordance with the terms of the contract of sale, and requested performance by the other. See Mattingly v. Pennie, 105 Cal. 514, 39 Pac. 200, 45 Am. St. Rep. 87; 39 Cyc. 1567, 3. In the instant case, the obligations of the seller to his agents are fixed by his last written agreement with them, dated September 13, 1915. It recites:

"Whereas they have now secured a purchaser who is ready, able, and willing to purchase said farm on the following terms, to wit: One thousand six hundred eighty-seven dollars and fifty cents ($1,687.50) when deed and abstract is furnished showing a good title to said lands, and balance of eighteen thousand dollars ($18,000) in purchase-money notes secured by mortgage, etc. I therefore agree to furnish said deed and abstract to the purchaser, conveying by warranty deed the lands mentioned above, between now and January 1, 1916, and shall give full possession to the purchaser not later than January 1, 1916, provided he has complied with the above-mentioned terms of purchase. I further agree to pay the Sharp Real Estate Company 5% of the entire purchase price when the deal is closed."

[2] Under this agreement it is clear that the plaintiff company could not collect the commission for making the sale until the sale was consummated according to its terms, or upon substituted terms, unless the defendant, the seller, wrongfully refused or failed to execute the sale on his part. Birmingham Co. v. Thompson, 86 Ala. 146, 5 South. 473.

[3] It may be conceded that this agreement shows an acceptance by the seller of the purchaser secured by plaintiff, though his identity had not been disclosed to him. But it is, we think, an elementary proposition of law that under the agreement the initiative was cast upon the purchaser to inform the seller when he was ready to close the purchase, by making the cash payment required. There is no evidence that this was done. Indeed, the undisputed evidence shows that the purchaser, through the medium of plaintiff, attempted to procure the deed by offering a check for $500, the amount required being $1,687.50, and without offering to execute the notes and mortgage to secure the balance of the purchase money. This was not only a failure to comply with the agreement, but was evidence to show that the purchaser was not then ready and able to meet the stipulated terms of purchase.

[4] It is to be noted, also, that the seller's obligation was to furnish the deed and abstract of title to the purchaser. This meant, by necessary implication, that the purchaser's name would be disclosed to the seller within the period in which the deed was to be made, by January 1, 1916, for a deed cannot be executed effectively without the name of the grantee.

[5] Under the evidence, however, it was a question of fact whether or not defendant waived the actual offer of performance by the purchaser, by himself refusing to perform, in the face of the announcements by or for the purchaser that he was ready to perform whenever the seller would make the deed. This was really the only material issue of fact, and was submitted to the jury under proper and comprehensive instructions. Charges 1, 2 and 4, refused to defendant, were fully covered by the oral charge.

[6] It was of course not improper for plaintiff to act for the purchaser in any way not inconsistent with his duty to his principal, the seller. Charge 5 was entirely too broad in this respect, and was properly refused.

[7] Charge 6, asserting that plaintiffs must have produced a purchaser known to defendant to be able, ready, and willing to execute the contract, was obviously incorrect, and was properly refused.

[8] It was entirely proper for plaintiffs to show that they had at all times informed defendant that the purchaser they had sold to was able, ready, and willing to make the cash payment. It was, in fact, their duty to so inform defendant, if they knew it was true.

[9, 10] That the written contract of purchase made by Westmoreland showed that plaintiffs were the agents of defendant was relevant evidence. If it was objectionable as being secondary evidence of a writing, the absence of which was not properly accounted for, that objection was not stated, and the objection actually made was properly overruled.

[11] If there was any error in sustaining the demurrers to pleas 4 and 6 it was without prejudice to defendant, for he clearly and fully had the benefit of the matter set up in each of these pleas under the general issue and other special pleas.

Considering the entire record, we think the case was fairly submitted to the jury on its material issues, and no error appears which ought to work a reversal of the judgment.

Affirmed.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.